IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO.: 2:12-CV-00062-FL

| | | |
|---|---|---|
| LARRY SESSOMS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DES 25, 27). The time for filing any responses or replies has expired and the motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 25) be GRANTED, that Defendant's Motion for Judgment on the Pleadings (DE 27) be DENIED, and that the Defendant's final decision be vacated and remanded for further proceedings.

**I. STATEMENT OF THE CASE**

Plaintiff protectively filed for disability insurance benefits and supplemental security income on September 22, 2009, alleging a disability beginning on January 1, 2004. (Tr. 232–41). His claim was denied initially and upon reconsideration. *Id*. at 73–102; 110–33. A hearing was held before an Administrative Law Judge ("ALJ") via video-conference on February 9, 2011 and, in a decision dated April 8, 2011, the ALJ determined that Plaintiff was not disabled. *Id*. at 20–31. The Social Security Administration's Office of Disability Adjudication and Review

Appeals Council ("AC") denied Plaintiff's request for review on November 16, 2012, thus making the ALJ's decision the final decision in this matter. *Id*. at 1–6. Plaintiff appealed that decision to this Court on December 6, 2012. (DE 5).

## II. STANDARD OF REVIEW

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . .

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

## III. ANALYSIS

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

*Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).

The ALJ followed the sequential evaluation in this case. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his injury onset date, January 1, 2004. (Tr. 25). At step two, the ALJ found that Plaintiff had the following severe impairments: right hip necrosis; depression; anti-social personality disorder; and polysubstance abuse. (*Id*). However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.). Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), with limitations. (*Id*.). These limitations include the following provisions: Plaintiff is able to alternate between sitting and standing every 30–45 minutes; no climbing of ropes, ladders or scaffolds; only occasional stooping, crouching, crawling or climbing of ramps or stairs; and

3

avoidance of concentrated exposures to hazards or extreme cold. (*Id.* at 27). He is also limited to performing simple, routine, repetitive tasks involving no contact with the public and with only routine changes in the work setting. (*Id*). The ALJ also determined that Plaintiff was not capable of performing past relevant work. (*Id*. at 29). Considering Plaintiff's age, education, work history and RFC, the ALJ determined that there were a significant number of jobs in the national economy which Plaintiff was capable of performing. (*Id*. at 30). Accordingly, the ALJ found that Plaintiff had not been under a disability during the relevant time period. (*Id*. at 31).

Plaintiff's contends that the ALJ's assessment of his RFC is not supported by substantial evidence. He further asserts that the Vocational Expert's testimony does not support the Commissioner's finding at Step Five that there is other work that he could perform.

*A. Evidence before ALJ*

The undersigned has reviewed the entire record, the relevant parts of which shall now be summarized.

*1. Plaintiff's testimony*

At the hearing before the ALJ, Plaintiff testified that he is able to read some and can do simple math. (*Id*. at 41). He testified that he has problems with his right hip, and that doctors told him he needs a hip replacement, but that he cannot afford it. (*Id*. at 43–44). Although he takes ibuprofen for pain, Plaintiff stated that it did not help. (*Id*. at 44). He also stated that he hurts all day, on and off, and that sitting and standing bother him. (*Id.* at 44–45). When he sits and when he lies down, he attempts to be off his left hip. (*Id*. at 45). He testified that he is uncomfortable all of the time. (*Id*).

Plaintiff also stated that he has had problems with depression all of his life. (*Id*. at 45). He was treated with medication while in prison but it did not help him. (*Id*. at 46). He further stated that he was admitted to Cherry Hospital in July, 2010 because he was suicidal. He was given medication, which he stopped taking after his discharge because it did not help. (*Id*. at 46–47).

On a typical day, Plaintiff stated that he spends most of the time in a room by himself. (*Id*. at 50). He is unable to do any laundry, sweeping or cleaning and he does not cook. (*Id*). He stated that he does not go out shopping or to visit other people and that he doesn't belong to any churches or organizations. (*Id*. at 50–51). He further testified that he uses a cane to stand and to walk. (*Id*. at 52). He stated that he lies down several times a day for more than an hour because of his pain. (*Id*. at 53). Plaintiff testified that the pain wakes him up and that his pain is worse when it is cold. (*Id*. at 54).

When questioned about his about his drug and alcohol use, Plaintiff testified that he no longer drank as much as he used to and that he had not used cocaine since July, 2010. (*Id*. at 48). He also stated that he has some problems with his memory and that he does not care to be around other people much. (*Id*. at 49). He testified that he could only sit for 4–5 minutes before needing to stand up and that he could only stand for a few minutes. (*Id*). The most he could lift, he stated, was a gallon of milk. (*Id*).

### 2. Medical Evidence

#### a. Dr. Land

Dr. Land performed a consultative exam on December 16, 2009. (*Id*. at 490–93). Dr. Land noted Plaintiff complained of right hip and right leg pain and a history of depression. The examination found: visual loss in right eye since childhood; full flexation of both hip joint and

knee joints; mild tenderness in the lower lumbar area on the right side; no muscle atrophy in the upper or lower extremities; mild-to-moderate limp favoring the right leg; ability to bend 90 degrees anteriorly at waist; able to ambulate in the exam room without his cane; and able to sit in a chair and put on his shoes and socks without assistance. (*Id*. at 493). Dr. Land's assessment was right hip and leg pain, possibly secondary to lumbar radiculopathy; advanced degenerative arthritis in the right hip and a history of depression. (*Id*. at 492).

b. *Dr. Larabee*

Dr. Larabee examined Plaintiff in January, 2011 and noted that Plaintiff had a history of severe right hip pain for approximately two years. (*Id*. at 614). He further noted that Plaintiff was unable to walk in a standard fashion, that he had a severe antalgic gait on the right side and that he had to use a cane to ambulate. (*Id*). Dr. Larabee stated that the pain was worse with activity and better with rest. (*Id*). He opined that Plaintiff takes about 5–6 times as long to ambulate a short distance as someone his age. (*Id*). Dr. Larabee stated that a November 18, 2009 MRI showed a 45% collapse and involvement of the right femoral head, avascular necrosis.[1] (*Id*). Dr. Larabee observed that the disease is progressive. (*Id*).

On examination, Dr. Larabee found no motion of his hip; no internal or external rotation; severe pain through his pelvis; and no flexation/extension of the hip. (*Id*). Dr. Larabee diagnosed end stage AVN progressed to auto fusion and complete collapse of his right his. (*Id*). Dr. Larabee assessed Plaintiff's function as unable to sit for any period without getting up every 15

---

[1] Avascular necrosis, or osteonecrosis, is the death of bone tissue due to a lack of blood supply. This can lead to tiny breaks in the bone and the bone's eventual collapse. Avascular necrosis most often affects the head of the thighbone (femur), causing hip pain. This condition is progressive, meaning that it gets worse over time, and the most common cause is bone fracture. Mayo Clinic-Avascular Necrosis, http:// www.mayoclinic.com.

minutes; unable to walk a distance greater than 10 yards; able to stand only for a few seconds, and only can stand on his left leg; and that he would benefit from total hip replacement. (*Id*).

### c. Other relevant medical evidence

On December 9, 2008, Plaintiff went to the ER at Bertie Memorial Hospital complaining of right his and knee pain. (*Id*. at 393). The ER noted decreased ROM and tenderness, and an x-ray showed sclerotic changes within the right femoral head which was suspicious for evolving changes of AVN. (*Id*. at 394–95). In March, 2009, Plaintiff received a medical exam by the DOC, which noted a decreased ROM in the right leg and an inability to stand on his right lower extremity with full weight. (*Id*. at 404–06). The DOC limited Plaintiff to standing for one hour at a time, with crutches; walking 200 yards at a time; sitting for 30 minutes at a time; no climbing, pushing or pulling; and use of his lower extremities as tolerated. (*Id*).

A March 26, 2009 x-ray of Plaintiff's hip showed cystic changes in the right femoral head which was probable for AVN. (*Id*. at 415). In November, 2009, Plaintiff was treated by Roanoke Chowan Community Health Center for his right hip pain. (*Id*. at 486–88). It was noted that prolonged sitting or lying on his back aggravated his pain. (*Id*). The PA noted that tenderness, and that Plaintiff's gait was impaired and that he walked with a cane. (*Id*). A November 18, 2009 MRI showed AVN of the superolateral right femoral head, extending to the neck and involving 35–45% of the articular surface; moderately severe articular cartilage degeneration of the superior right hip; moderate surrounding bone marrow edema; and small right hip joint effusion. (*Id*. at 522). The PA noted the serious nature of the condition and referred Plaintiff to an orthopedist. (*Id*. at 504). Additionally, a July 1, 2010 x-ray of his right hip shoed arthritis with AVN. (*Id*. at 612).

### 3. Third party statements

In addition to acceptable medical sources, Social Security may use evidence from other sources, including spouses, to show the severity of the individual's impairment(s) and how it affects the individual's ability to function.

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03P, 2006 WL 2329939. In considering evidence from non-medical sources, such as a spouse in the instant matter, it is "appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence. *Id.*

Plaintiff's wife, Tonavis Sessoms, with whom he lives, offered a Third Party Function Report dated March 21, 2010. (*Id.* at 298–305). Although she stated that she had known the Plaintiff for over 16 years, she also stated that she spent no time during the day with him, perhaps only 20 minutes, as they "do nothing together." (*Id.* at 298). The report further stated that all the Plaintiff does is lay around in his room with the door closed. (*Id*). Mrs. Sessoms further stated that he does not take care of any family or pets and that he wakes up constantly through the night. (*Id.* at 299). She further alleges that it hurts for Plaintiff to dress and bathe and that he is too depressed to groom or to eat regularly. (*Id*). Mr. Sessoms stated that Plaintiff constantly needs to be encouraged because he is too depressed to take any initiative. (*Id.* at 300). Plaintiff neither performs household chores not prepares meals and also does not pay bills or go shopping. (*Id.* at 300-01). She also stated that Plaintiff goes nowhere except for medical

8

appointments and that he has problems getting along with family and friends because he is so distant. (*Id*. at 302–03).

Mrs. Sessoms stated that Plaintiff can only walk about 500 feet before needing to stop and rest for about 30 minutes. (*Id*. at 303). She alleges that he is very easily distracted, a result of which is that he cannot follow instructions well. (*Id*). She stated that Plaintiff has excessive mood swings and that he does not handle stress or changes in routine well (*Id*. at 304). She further averred that Plaintiff was moody, paranoid depressed, withdrawn and had a fear of people. (*Id*).  Finally, she stated that he has used a cane since March, 2009. (*Id*).

*B. Step Three*

Step Three of the sequential evaluation process requires the ALJ to determine whether plaintiff's impairments meet or equal any of the listed impairments set forth in Appendix 1 to 20 C.F.R. Part 404, Subpart P. 20 C.F.R. §§ 404.1520(d), 416.920(d). The listings describe specific impairments in each of the body's major systems that are considered "severe enough to prevent a person from doing most gainful activity." 20 C.F.R. §§ 404.1525, 416.925(a). Severe impairments must be "permanent or expected to result in death," or must last or be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1525(a), 416.925(a). The ALJ's analysis at step three must rely only on medical evidence and not rely on age, education or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d); *see also Cauffman v. Astrue*, 2010 WL 5464815, *4 (W.D. Wash. 2010).

To be found disabled at step three, plaintiff must prove that he meets or equals each of the characteristics of a listed impairment. 20 C.F.R. §§ 404.1525(a), 416.925(a); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.2005). "For a claimant to show that his impairment

9

matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in original). Similarly, "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id*. at 531 (emphasis in original). The burden of proof is on the claimant to establish that his impairment meets or equals a listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). A claimant who meets or equals a listing is presumed disabled at step three without further inquiry. 20 C.F.R. § 416.920(a)(4)(iii).

Although th Plaintiff does not raise it as an issue, it is arguable that his avascular necrosis meets the impairment listed in § 1.02A of Appendix 1. That section, addressing major dysfunction of a joint, is characterized by (1) "gross anatomical deformity ... and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and (2) findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)" with (3) "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in (4) inability to ambulate effectively." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02A. While a claimant bears the burden of proving that he has an impairment or combination of impairments that meets or equals the criteria of a listed impairment, an ALJ must still adequately discuss and evaluate the evidence before concluding that a claimant's impairments fail to meet or equal a listing. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Here, the ALJ's discussion of whether Plaintiff's

10

avascular necrosis satisfies Step Three is limited to a single sentence: "The record does not show that the claimant has major dysfunction of any joint . . . resulting in the inability to ambulate effectively . . . as required by Medical Listing 1.02[.]" (Tr. 25–26). This statement not only fails to adequately explain the evidence in making a determination at Step 3 such that meaningful judicial review is possible, but appears contrary to the medical evidence of record. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) ("[A] conclusory statement that a condition does not constitute the medical equivalent of a listed impairment is insufficient."); *Coble v. Colvin*, No.7:12-CV-197, 2013 WL 4597149, at *5 (W.D. Va. Aug. 29, 2013) (finding an impermissible conclusory statement at Step Three where the ALJ "simply stated that he considered the record and it [did] not support a conclusion that claimant's impairments were of listing-level severity"); *Kiernan v. Astrue*, 3:12-CV-459–HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (The ALJ is required to clearly articulate the reasons for his decision regarding a listed impairment.).

The evidence may support a finding that Plaintiff's AVN constitutes a "gross anatomical deformity" within the meaning of section 1.02. The record documents Plaintiff's AVN beginning no later than November, 2008 (Tr. 491). Additionally, the medical records show that Plaintiff suffered pain and limited movement due to his right hip condition. In December, 2008, he complained of joint pain and exhibited tenderness and decreased ROM; a March, 2009 x-ray showed cystic changes in the right femoral head indicative of aseptic necrosis; a November, 2009 MRI evidenced avascular necrosis of the right femoral head and moderately severe articular cartilage degeneration. The treatment records are replete with references to his pain and that his gait was impaired. These characteristics satisfy the first requirement of the 1.02 Listing.

*See Richardson v. Astrue*, No. 10-CV-9356, 2011 WL 2671557, at *9 (S.D.N.Y July 8, 2011).

The x-rays and MRIs satisfy the second and third elements, *to wit.*, "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)" which involve "one major peripheral weight-bearing joint (i.e., hip [.])." As to the fourth element, there is conflicting evidence about Plaintiff's ability to ambulate effectively. An "inability to ambulate effectively" is defined to include:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. . . . [E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes [and] the inability to walk a block at a reasonable pace on rough or uneven surfaces, . . . The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00B2b.

Dr. Brian Smith, a psychiatrist from whom Plaintiff sought treatment, noted he used a cane. (Tr. at 385). Dr. Larabee noted that Plaintiff ambulates slowly and that it takes him 5–6 times as long to walk distance of about 20 yards. (Tr. 614). He found that Plaintiff could walk about 10 yards, but that it was very painful. (*Id*). Dr. Larabee's examination found no motion in his hip, no internal or external rotation, and no flexation/extension of the hip. (*Id*). He found that Plaintiff was in severe pain and that the hip was auto fused due to the advanced collapse of the femoral head. (*Id*). Dr. Land stated that Plaintiff's hip and leg pain was constant and that it worsened with standing or walking, and that he used a cane for ambulation. (*Id*. at 491). While Dr. Land observed that Plaintiff was able to move around the examination room without his cane, movement in such a limited space is akin to "walk[ing] independently about one's home" and thus does not, without more, constitute effective ambulation. Additionally, opinions of Drs.

Ben Williams and Charles Clifford, state agency consultants who reviewed Plaintiff's claim, stated that he was able to walk without a cane, but neither supported this with observation or examination nor qualified by a time and/or distance capacity.

Thus, there is sufficient evidence to arguably establish that Plaintiff's avascular necrosis is a major dysfunction of a joint — here, his right hip — that meets the elements of Listing 1.02. Consequently, the ALJ erred at Step Three by failing to properly analyze the medical evidence with reference to the Listing 1.02. Accordingly, remand on this issue is appropriate.

*C. Plaintiff's RFC*

Nonetheless, even if the ALJ had not erred at Step Three, Plaintiff contends that his RFC was not properly determined. Specifically, Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because it failed to properly weigh the opinions of Drs. Land and Larabee; it failed to include Plaintiff's other limitations; and it did not consider the third party statement of Plaintiff's wife.

At Step 4, the ALJ determines the claimant's RFC, which "represents the most that an individual can do despite his or her limitations or restrictions." *See* Social Security Ruling 96–8p, 61 Fed. Reg. 34474, 34476 (1996). This requires the ALJ to evaluate a claimant's ability to do sustained work-related physical and mental activity on a regular basis. In making this finding, the ALJ considers the functional limitations from medically-determinable impairments. Thus, when the medical evidence shows a limitation, the ALJ must factor that into the RFC assessment. This "assessment . . . provides a backdrop for the ALJ's evaluation[s] . . . and provides insight into [them]." *Worden v. Astrue*, 2012 WL 2919923, *5 (E.D.N.C. May 29, 2012), *Report and Recommendation Adopted by*, *Worden v. Astrue*, 2012 WL 2920289.

*1. Weight afforded to opinions of Drs. Land and Larabee*

Plaintiff contends that the ALJ erred in giving less weight to Dr. Larabee's opinion and greater weight to Dr. Land's opinion. Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Specifically, under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under § § 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2006). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the

14

ultimate determination of disability is reserved to the ALJ. *Id*. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

Both Drs. Land and Larabee examined Plaintiff on only one occasion. Dr. Land is an internist whereas Dr. Larabee is an orthopedic surgeon. A diagnosis of AVN falls more within the scope of an orthopedic specialty than that of internal medicine. Additionally, Dr. Larabee's findings are supported by the objective medical evidence including the MRIs and x-rays noting the presence and progression of AVN.

Moreover, the findings of Drs. Land and Larabee, as well as Plaintiff's hearing testimony, are not, necessarily, inconsistent. Dr. Land's exam occurred more than one year before hearing whereas Dr. Larabee's examination was less than one month before the hearing. Given the progressive nature of the impairment, it is not inconsistent for the findings to have changed as Plaintiff's impairment became more limiting.

Thus, inasmuch as the Dr. Larabee's medical opinion is not inconsistent with Dr. Land's opinion, or with the evidence, there is no basis for affording Dr. Land's opinion more weight than Dr. Larabee's. Given the timing of the examination, coupled with the AVN diagnosis being well within Dr. Larabee's expertise, and the objective medical evidence supporting his diagnosis, it was error for the ALJ to give his opinion less weight. For this reasons, remand is warranted.[2]

---

[2] To the extent Dr. Larabee rendered an opinion as to the ultimate issue, disability, it is not considered inasmuch as that issue is reserved to the Commissioner. *Worthington v. Astrue*, No.2:11-CV-0049-D, 2013 WL 594106, at *4 (E.D.N.C. Jan. 24, 2013); 20 C.F.R. §404.1527(e). Discrediting his other findings, however, in not required.

*2. Other medical conditions*

Plaintiff next argues that the RFC fails to include his other medical conditions, *to wit.*, anti-social personality disorder, decreased vision and use of hand-held assistive device (cane). Under 20 C.F.R. § 404.1545(e), when determining a claimant's RFC, the regulation requires the ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe ...." *See also*, SSR 96–8p, 1996 WL 374184, *5 (S.S.A.1996) (stating that "in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). The failure of an ALJ to consider all of a claimant's impairments in their RFC analysis constitutes reversible error. *See Jones v. Astrue*, 2009 WL 455414, *2 (E.D.N.C. Feb. 23, 2009) (unpublished decision) (stating that "it is not reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considers the impairment in subsequent steps ").

With respect to his anti-social personality disorder, the ALJ noted it and discussed his history and treatment for that condition. Although the ALJ found it to be a severe impairment, she further noted that it was "greatly exacerbated when he was using drugs and alcohol." She then concluded that, as long as Plaintiff is compliant with the recommended therapies and abstains from drug and alcohol use, his mental impairments "do not prevent him from performing at least simple, routine, repetitive-type tasks in a low stress environment with only routine changes in the work setting and no dealing with the public." (Tr. at 29). Dr. Williams' treatment notes indicate that Plaintiff was able to get along with his peers and that he was not significantly limited in his ability to accept instruction and respond appropriately to criticism. (*Id*. at 110–21). Likewise, Dr. Charles also found Plaintiff was able to get along with coworkers

16

and found that he had only moderate limitations in accepting instructions and criticism. (*Id.* at 73–87). The RFC is reflective of these findings and, thus, his mental impairments were properly considered.

As to his eyesight, Plaintiff's right eye vision was determined to be 400/100 in March, 2009. The ALJ makes no reference to this impairment. However, as noted by the Defendant, Plaintiff's vision has been impaired since his childhood, and has not been alleged to have worsened or to be a reason he is no longer able to work. Indeed. Plaintiff was previously capable of full-time employment with this condition. As such, it is not disabling. *See Cauthen v. Finch*, 426 F.2d 891 (4th Cir. 1970) (affirming denial of benefits where evidence showed that plaintiff's eye problem was long-standing and that she had worked regularly for many years affected to virtually the same extent as at present).

Plaintiff also asserts that the ALJ did not properly account for his use of a cane to stand and walk. While there was evidence that the Plaintiff could walk without the cane, it was only noted to be in the examination room. (Tr. 493). This alone is insufficient to establish his ability to ambulate effectively without a cane. Plaintiff testified that he uses a cane every time he walks somewhere in the house and that he tries to keep weight off his right leg and hip. (*Id.* at 52–53). His wife stated that he uses a cane every time he walks. (*Id.* at 304). Accordingly, the evidence supports the fact that the cane is necessary to his ability to walk, and it was error for the ALJ not to include this limitation in formulating his RFC. Accordingly, this issues forms a basis for remand.

*3. Third party statement*

Plaintiff also asserts that the ALJ did not consider the third party statement submitted by his wife. Mrs. Sessoms' statements were consistent with Plaintiff's testimony regarding his daily routine, his depression and the fact that he is not around other people generally. Plaintiff has failed to demonstrate that the lack of specific reference to the third party statement is indicative that it was not considered. Although the ALJ did not specifically cite to the third party statement of Mrs. Sessoms, it was an exhibit that was admitted into the record which, the ALJ noted, she had carefully reviewed in its entirety. (Tr. 25, 38). Accordingly, there is substantial evidence to support a finding that the third party statement was considered by the ALJ.

Accordingly, the ALJ properly evaluated Plaintiff's reported impairments in light of the evidence of record. Consequently, this assignment of error is without merit.

*4. Credibility*

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). The regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; *Craig*, 76 F.3d at 593-96. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); *Craig*, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); *Craig*, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they

18

limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c).

At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See Craig*, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, at *4. Ultimately, the ALJ's findings with regard to a claimant's credibility must "contain specific reasons . . . supported by evidence in the case record." *Id*. at *2. Further, Social Security Ruling 96-7 provides:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7, 61 Fed. Reg. 34483-01.

In this matter, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with his RFC. She based her discrediting finding on the fact that Plaintiff was

19

arrested 53 times and incarcerated 11 times and the fact that he had made numerous inconsistent statements over the years about his drug and alcohol use. (Tr. at 29). This conclusion is faulty in two respects: first, it does not adhere to the second step in evaluating subjective complaints of pain and, further, suggests that any limitation beyond the scope of the RFC, as determined by the ALJ, is to be discredited. Second, and more troubling, is the finding that Plaintiff's history of criminal activity and substance abuse render his subjective complaints of pain wholly unbelievable. To be certain, such a background may certainly cast doubt on a claimant's credibility. However, a general conclusion that such a history precludes any credibility is overbroad and unsupported. *See Smth v. Astrue,* 851 F. Supp. 2d 305, 310 (D. Mass. 2012) (past misconduct alone cannot in itself provide a basis for automatically rejecting testimony outright.) (citing *Bass v. Astrue*, No. 10–CV–30057–MAP, 2011 WL 31296 (D. Mass. Jan. 4, 2011) (while "a criminal record may undermine credibility, past misconduct alone cannot in itself provide a basis for automatically rejecting testimony outright.")). This is especially true when, as here, the evidence did not support a finding of current substance abuse. To the extent the ALJ found Plaintiff had been inconsistent, she should have offered bases for this finding with specific references to the record. Having failed to do so, the ALJ erred in evaluating Plaintiff's subjective complaints of pain. Thus, his RFC has not been properly determined.

*C. Step Five*

While a claimant has the burden at Steps 1–4, it is the Commissioner's burden at Step 5 to show that work the claimant is capable of performing is available. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). At Step 5, the Commissioner must establish both that the claimant has the capacity to perform an alternative

job, considering his or her age, education, skills, work experience, and physical shortcomings and also that such a job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

At Step 5, the Vocational Expert ("VE") identified the following sedentary, unskilled positions that a person with Plaintiff's age, education, work history and RFC could perform: addresser, sorter and surveillance system monitor. (*Id*. at 30). Plaintiff argues that the ALJ erred at Step 5 by asserting because the hypothetical questions posed to the VE that were premised on an RFC that, as he argued above, was not supported by substantial evidence.

Having concluded that the ALJ improperly assessed his RFC, the jobs identified by the VE cannot be considered inasmuch as there are premised on an incorrect functional ability. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (stating that an ALJ errs when he or she makes findings at step five based on a VE's answer to a hypothetical question that did not reflect each limitation caused by a claimant's impairments); *Kemp v. Astrue*, No. 8:09-3318, 2011 WL 4434030, at *11 (D.S.C. 2011) ("Because the Court has found the ALJ erred in determining Plaintiff's RFC, and an ALJ must use the RFC assessment to pose hypothetical questions to the vocational expert, the ALJ further erred in relying on the vocational expert's testimony in response to a hypothetical based on the flawed RFC assessment.").

Accordingly, the Defendant has failed to carry his burden at Step 5 of the sequential evaluation. Thus, this issue, too, warrants remand for further proceedings.

**IV. CONCLUSION**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for

Judgment on the Pleadings (DE 25) be GRANTED, that Defendant's Motion for Judgment on the

Pleadings (DE 27) be DENIED, and that the matter be remanded for further proceedings.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on November 6, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE